**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                No. CR 15-896 RB

FROYLAN GANDARA-DELGADO,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

       Defendant Froylan Gandara-Delgado, indicted for felony reentry into the United States, moves to dismiss the charge against him.  (Doc. 31.)  The Government opposed the motion.  (Doc. 32.)  The Court held a hearing on June 9, 2015.  Having reviewed the parties' submissions and arguments, the Court DENIES Defendant's motion to dismiss.

**I.      BACKGROUND**

       According to Border Patrol's records, Defendant was first intercepted attempting to enter the United States on August 21, 2001.  (Doc. 31 at 1.)  At that point, Defendant had already lived in the United States with his wife and children for several years.  (Ex. D at 2-3, Doc. 31-1.)  He went to visit Mexico and attempted to return to the United States by presenting his brother's United States passport as his own.  (Doc. 31 at 1.)  When questioned, Defendant confessed that the passport was not his, that he had taken the passport without his brother's knowledge, and that he knew it was improper.  (*Id.*; Ex. D at 3.)  Based on the false representation that he was a United States citizen and passport holder, the Border Patrol Agent determined that Defendant was "inadmissible" under 8 U.S.C. § 1182 (a)(6)(C)(ii).  (Ex. A at 1, Doc. 31-1.)  In his interview, Defendant conceded that he did not have any legal claim to being a United States citizen and that

he did not fear persecution in Mexico.   (Ex. D at 2, 5.)   Defendant was subsequently removed under the expedited removal provision in 8 U.S.C. § 1225(b)(1) (permitting an officer to exclude an inadmissible alien who has not been admitted to the United States or paroled).   (Ex. A at 1.)

Thereafter, Border Patrol apprehended Defendant in El Paso, Texas, in December 2009. (Ex. E, Doc. 31-1.)   The prior removal order was reinstated under 8 U.S.C. § 1231(a)(5) and he was deported.   (*Id.*)   His removal order warned Defendant that it was a crime for him to re-enter the United States and that he could be subject to prosecution for a felony, a prison sentence, and/or a fine up to $250,000.   (*Id.* at 3.)

Most recently, Defendant was found in Sunland Park, New Mexico, in December 2014. (Doc. 31 at 2.)   After discovering Defendant's prior removals, Border Patrol Agent Lorenzo Ortiz arrested Defendant and charged him with violating 8 U.S.C. § 1326(a) (felony reentry).   (Compl., Doc. 1.)   Defendant moves to dismiss the Complaint because the prior immigration proceedings allegedly violated his due process rights and cannot be used against him in a criminal proceeding. (Doc. 31 at 6-11.)

## II.    LEGAL STANDARD

Under certain circumstances, immigrants can collaterally attack the fairness of their prior deportation orders in later criminal proceedings.   *See United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987).   Before the government can use an administrative order to establish an element of a criminal offense, a federal district court must assess whether the defendant received due process in his earlier administrative proceeding.   *Id.* (holding that some form of "judicial review must be made available before the administrative order may be used to conclusively establish an element of a criminal offense").

According to statute, "an alien may not challenge the validity of [a] deportation order" in a

later criminal proceeding unless:

>    (1) the alien exhausted any administrative remedies that may have been available
>    to seek relief against the order;
>
>    (2) the deportation proceedings at which the order was issued improperly deprived
>    the alien of the opportunity for judicial review; and
>
>    (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).   In order to show that the prior deportation proceeding was fundamentally

unfair, the defendant must show that he was prejudiced by the due process violation.   *United

States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc).   Specifically, Defendant

must show that, but for the alleged errors, there is "a reasonable likelihood" that he would not have

been deported or removed.   *Id.* at 1209; *see also Mena-Flores v. Holder*, 776 F.3d 1152, 1169

(10th Cir. 2015) (applying *Aguirre-Tello*'s "reasonable likelihood" standard).

## III.    DISCUSSION

In a sweeping criticism of America's current immigration scheme, Defendant claims that

"[a] careful examination of the provisions of the expedited removal process contained in the Act

effectively deprives persons of not only procedural due process, but also of a protected interest of

their right to contest the finding of inadmissibility or to simply withdraw their application for

admission." (Doc. 31 at 11.)   Defendant does not claim that his experience was atypical:

everything about Defendant's earlier removal followed immigration laws and regulations.   Rather

he claims that the expedited removal immigration scheme, which was enacted in 1996, violates the

spirit of due process.

As an initial matter, the process for expedited removal has been deemed constitutional.

*See M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156 (D.N.M. 2014) (holding that

the expedited removal process does not violate the Constitution).   Under the existing legal

framework, Defendant cannot show that he was prejudiced by any of the due process deficiencies he alleges.

### A.  Defendant's Facial Challenge to Expedited Removal

To support his challenge to the statutory scheme, Defendant invokes *Mendoza-Lopez* for the proposition that deportees have due process rights.   481 U.S. at 838-39.   If the government violates a deportee's due process rights, then the government cannot use evidence from the deportation proceeding in a criminal prosecution.   *Id.*   *Mendoza-Lopez* is a foundational case that clarified immigrants' rights to collaterally attack civil deportations in later criminal proceedings. In order to wage a *Mendoza-Lopez* collateral attack today, however, the challenger must meet the requirements set forth in the statute.   8 U.S.C. § 1326(d) (explaining requirements for collaterally attacking a prior immigration proceeding).

Defendant relies on *United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012).   In *Reyes*, the Ninth Circuit determined that Mr. Reyes-Bonilla did not validly waive his right to appeal his prior deportation.   *Id.* at 1042, 1045.   The invalid wavier violated his due process rights and improperly deprived Mr. Reyes-Bonilla of judicial review.   *Id.*   Regardless, the Ninth Circuit held that Mr. Reyes-Bonilla could not collaterally attack the order in his criminal prosecution because he could not meet the third statutory prong: fundamental unfairness.   *See id.* at 1046, 1052 (citing 8 U.S.C. § 1326(d)(3)).   The Ninth Circuit held that because Mr. Reyes-Bonilla did not "demonstrate[] a plausible claim to relief from the 2001 removal order," he was "not prejudiced by the violation of his due process right" and therefore could not show that the removal order was fundamentally unfair.   *Id.*   *Reyes* stands for the proposition that while deportees are afforded due process rights, they must meet the statutory requirements before collaterally attacking a prior immigration proceeding in later criminal prosecutions.

4

Defendant specifically challenges the expedited removal scheme on the basis that the Due Process Clause requires "some form of hearing." (Doc. 31 at 11.) Defendant cites to a Western District of Texas case which ruled that a deportee had a right to hearing before his administrative deportation (Doc. 31 at 9 n.1), however the case was summarily reversed by the Fifth Circuit. *See United States v. Laudino-Torres*, 203 F.3d 828, 1999 WL 1240877 (5th Cir. 1999) (unpublished) (reversing and remanding the district court decision). In its reversal, the Fifth Circuit cited to *Benitez-Villafuerte*, where the Fifth Circuit said, "it is clear to us that the administrative deportation procedures of [expedited removal under 8 U.S.C.] § 1228 afforded [Mr.] Benitez the unimpeded opportunity to claim all the procedural due process to which he was constitutionally entitled." 186 F.3d 651, 657 (5th Cir. 1999). The Fifth Circuit dismissed Mr. Benitez's claim that due process required a hearing, finding instead that Mr. Benitez was given all the process required under immigration law. *Id.* This Court is not persuaded that Defendant is any more entitled to a hearing than Mr. Benitez was. In fact, immigrants facing exclusion from entry into the country, like Defendant, generally have fewer due process rights than immigrants facing deportation, such as Mr. Benitez. *Compare Kaoru Yamataya v. Fisher*, 189 U.S. 86, 100-01 (1903) (holding that an immigrant residing in the United States and subject to deportation has a right to due process of law); *with United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

As a general proposition, "[t]he power to expel aliens is essentially a power of the political branches of government, which may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." *Benitez-Villafuerte*, 186 F.3d at 657 (quoting *Carlson v. Landon*, 342 U.S. 524, 537 (1952)).

Defendant brings several policy arguments to explain why the law should be different.   He acknowledges that his arguments ask the Court to ignore precedent and chart a new legal course. This Court, however, has sworn to uphold the law as written and therefore cannot accept Defendant's invitation.

### B.  Defendant's Challenge to his Prior Removal

In addition to the general challenge to the legal framework, Defendant objects to several aspects of his prior removal.   Primarily, Defendant complains that he was not read his *Miranda* rights before he made statements to Border Patrol in 2001 and 2009.   On that ground, Defendant argues that the statements he made to Border Patrol are inadmissible and his prior removals were fundamentally unfair.   (Doc. 31 at 6.)   At the hearing, the Government stipulated to the fact the Defendant was not read his *Miranda* rights.   However, as the Government argues, persons subject to civil immigration proceedings do "not have a right to a *Miranda* type warning in a deportation hearing."   *United States v. Valdez*, 917 F.2d 466, 469 (10th Cir. 1990).   Immigration proceedings are civil proceedings, not criminal.   *Id.*; *see also Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1024 (10th Cir. 2007) ("[A] removal proceeding is a civil proceeding, not a criminal one, and the demands of constitutional or legal safeguards are accordingly less strict.").   "[B]ecause an immigration hearing is civil in nature," not only is a deportee not entitled to *Miranda* warnings, his "silence could be used against him."   *Valdez*, 917 F.2d at 469.   Moreover, the Tenth Circuit decided in *Valdez* that an alleged *Miranda* violation at an immigration hearing does not support a challenge that the hearing was fundamentally unfair.   *Id.* (holding that "this lack of a *Miranda* type warning" does not demonstrate that the hearing "was fundamentally unfair or denied [the defendant] effective judicial review").   The lack of *Miranda* warnings does not support Defendant's attempt to collaterally attack his prior removal.

6

Defendant argued that *Valdez* should not control and that, instead, the Court should look to the opinion in *United States v. Posada Carriles*, 541 F.3d 344 (5th Cir. 2008).   At the district court level, the court for the Western District of Texas suppressed statements that the defendant made during an earlier immigration interview on the bases that (1) the translation was unreliable and (2) the Government improperly manipulated the civil proceeding to secure evidence for the criminal prosecution.  *Id.* at 352-53.   The Fifth Circuit reversed the ruling.  *Id.* at 366.   While confirming that it would consider a motion to suppress statements made during a civil proceeding if a government official made "'material misrepresentations' about the nature of the investigation or inquiry," the Fifth Circuit clarified that the standard for suppression is steep.  *Id.*   The holding in *Posada Carriles* does not undermine the *Valdez* holding.   Rather, it states a narrow exception to the general rule that the government may use evidence obtained during a civil proceeding to criminally prosecute a defendant.   *See id.* at 354 ("[It is a] well-settled rule that the government may conduct simultaneous civil and criminal proceedings without violating the due process clause or otherwise departing from proper standards in administering justice.").   The federal government may use evidence obtained during a civil investigation in a later criminal prosecution without offending due process.  *See United States v. Kordel*, 397 U.S. 1, 11 (1970) (denying respondents' arguments that the federal government should be barred from using incriminating statements made during a civil investigation in a later criminal prosecution).   Here, Defendant has not offered any reason under the law why his statements should be suppressed during this criminal prosecution.

Separately, Defendant tries to challenge several other aspects of his removal.  First, he claims he should have been notified of his appeal rights (Doc. 31 at 6), but he had no right to appeal his expedited removal.  *See* 8 U.S.C. § 1225(b)(1)(C) (no right to administrative appeal of an expedited removal order unless alien claims he was admitted for permanent residence, was granted

7

asylum, or was seeking refugee status); *see also M.S.P.C.*, 60 F. Supp. 3d 1156 (holding that district court does not have jurisdiction to review the merits of expedited removals).   Defendant does not claim any circumstances that would have made his prior removal order eligible for an appeal.   Second, Defendant complains that he should have been given an opportunity to withdraw his application for entry (Doc. 31 at 6), but he was never entitled to withdraw his application.   *See* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.")   The Attorney General has the discretion to allow withdrawals, but aliens have no such right.   *Id.*   Finally, Defendant avers that he was not properly advised of the immigration consequences of an expedited removal (Doc. 31 at 6), yet his forms advised him of the consequences of reentry: that he could be subject to imprisonment and fines. (Ex. C.)   None of these criticisms support Defendant's collateral attack on his prior removal.

## IV.   CONCLUSION

In short, Defendant did not have a right to any of the procedures he claims were necessary to protect his right to due process.   Thus, Border Patrol's alleged failure to provide any of these procedures does not amount to a due process violation.   Moreover, Defendant cannot show that his story would have been different if he had received additional process.   Given the facts of Defendants case—including the false claim to citizenship, no legal claim to permanent residence, and no attempt to seek asylum—Defendant was bound to be removed under the law.   Without a plausible claim that the outcome would be different, Defendant cannot show that his application to enter the United States was prejudiced.   *See Aguirre-Tello*, 353 F.3d at 1209 (requiring challengers to demonstrate "a reasonable likelihood" that they would not have been deported or removed in order to show prejudice).   Because Defendant cannot establish prejudice, he cannot

establish that his prior immigration proceedings were fundamentally unfair. *See id.* Under the law as written, Defendant has failed to meet his burden. Therefore, Defendant's motion to dismiss is denied.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 31) is **DENIED**.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE